Willard WILLIAMS,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 371, Docket 83–2238.

United States Court of Appeals,
Second Circuit.

Argued Nov. 22, 1983.
Decided March 22, 1984.

---

Sheryl E. Reich, New York City (Jay Goldberg, New York City, on brief), for petitioner-appellant.

Roanne L. Mann, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Paul L. Shechtman, Asst. U.S. Atty., New York City, on brief), for respondent-appellee.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Willard Williams appeals from an order of the United States District Court for the Southern District of New York, Richard Owen, *Judge*, denying his second petition pursuant to 28 U.S.C. § 2255 (1976) to vacate his plea of guilty to a charge of organizing a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (1976). Williams was sentenced to, *inter alia*, a term of life imprisonment without possibility of parole. The current petition contended that Williams's plea of guilty was involuntary because he was not informed by the court, and was otherwise unaware, that a plea of guilty to a charge under § 848 would expose him to a sentence of life imprisonment without possibility of parole. The district court denied the petition on the grounds that the court was not required to inform Williams of the parole consequences of his plea, that on Williams's first § 2255 petition his plea of guilty had been found to be voluntary, and that the court had the discretion to deny summarily a § 2255 petition that presented the same ground as an earlier petition. We affirm on the ground that the denial of the present petition was within the district court's discretion as defined in *Sanders v. United States*, 373 U.S. 1, 15–19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The current petition raises the same legal ground as the prior petition, and the ends of justice do not require that the present petition be entertained.

## BACKGROUND

In June 1981, Williams was indicted on 25 counts of violations of the narcotics laws. Sixteen other persons were indicted with him on various counts. Count 2 of the indictment charged Williams with organiz-

ing a continuing criminal enterprise, in violation of 21 U.S.C. § 848. On February 17, 1982, the day after trial began, Williams sought to plead guilty to the § 848 count, with the understanding that the remaining counts would be dismissed at the time of sentence and that he could preserve his right to appeal certain pretrial rulings on motions to suppress. Prior to accepting Williams's plea, the district court conducted an allocution and informed Williams that a plea of guilty to a charge under § 848 would expose him to a maximum term of life imprisonment, plus a fine of up to $100,000 and the forfeiture of any profits or property generated by the activities of the criminal enterprise. Williams stated that he understood and that no one had told him what sentence he would receive if he pleaded guilty. After completing its questioning of Williams, the court accepted his conditional plea of guilty to a violation of § 848. On May 7, 1982, Williams was sentenced under § 848 to, *inter alia*, a term of life imprisonment.[1] Any person sentenced for a violation of § 848 is, under the terms of that section, ineligible for parole. 21 U.S.C. § 848(c).

On May 10, 1982, Williams applied to the district court for a reduction of his sentence on the ground that the sentence was unduly severe. The motion was denied.

## A. *The First § 2255 Petition*

On August 16, 1982, Williams petitioned the district court pursuant to 28 U.S.C. § 2255 to vacate his plea of guilty on the ground that it was involuntary. Williams contended that he had been led to believe, by virtue of conversations of his counsel with the prosecutor and the court, that if he pleaded guilty, the court would not impose the maximum possible sentence. According to both Williams and his counsel, Jay Goldberg, Esq., conversations Goldberg had with the prosecutor and the court led Williams to believe that the court would sentence him in the same manner that the

court had sentenced one Frank Moten, *see United States v. Moten,* 564 F.2d 620 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 489, 54 L.Ed.2d 318 (1977), who had not received the maximum possible sentence. *See id.* at 623 n. 3. (Affidavit of Willard Williams, dated July 20, 1982 ("First Williams Aff."), at 1–2; Affirmation of Jay Goldberg, dated August 16, 1982 ("First Goldberg Aff."), at 2.) According to Williams and Goldberg, the prosecutor had informed Goldberg that any presentence memorandum would liken Williams to Frank "Moten, not Leroy Barnes." (First Williams Aff. at 2; First Goldberg Aff. at 2.) Leroy "Nicky" Barnes had been sentenced under § 848 to the maximum term of life imprisonment without possibility of parole. *See United States v. Barnes,* 604 F.2d 121, 156 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). Williams contended that if he had believed there was any possibility that the court might impose the maximum possible sentence, he would not have pleaded guilty.

The district court rejected Williams's contention that his plea of guilty had been involuntary, pointing out that at his plea hearing Williams had stated that no one had made any representations to him as to the sentence he would receive.

Williams appealed the denial of his first § 2255 petition to this Court, contending that his plea of guilty had been involuntary, and that its acceptance thus violated Fed.R.Crim.P. 11 and the United States Constitution. We summarily affirmed the denial of Williams's petition. The Supreme Court denied certiorari. *Williams v. United States,* ⸺ U.S. ⸺, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983).

## B. *The Present § 2255 Petition*

Williams filed the present petition on April 7, 1983, asserting again that his plea of guilty had been involuntary. This petition asserted for the first time that the reason the plea was involuntary was that

---

**1.** Williams's contentions as to the issues reserved for appeal were rejected by this Court, and his conviction was affirmed in *United States*

*v. Terry,* 702 F.2d 299 (2d Cir.), *cert. denied,* ⸺ U.S. ⸺, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983).

the court had failed to inform Williams during his Rule 11 allocution that if he was given the maximum sentence of life imprisonment, he would be statutorily ineligible for parole. Williams asserted that he did not know of this parole ineligibility and that he would never have entered a plea of guilty had he been aware that the possibility existed that he could be sentenced to prison for the rest of his life. (Affidavit of Willard Williams, dated March 31, 1983 ("Second Williams Aff."), at 2.) Goldberg, in a new affirmation, stated that he could not recall whether or not he had "advised [Williams that] a life sentence without parole was a possibility." (Affirmation of Jay Goldberg, dated March 31, 1983 ("Second Goldberg Aff."), at 1 n. *.)

The district court rejected this second petition on alternative grounds. Relying on *Hunter v. Fogg,* 616 F.2d 55 (2d Cir. 1980), it ruled that neither Rule 11 nor the Constitution required the court to inform Williams as to the parole ramifications of the sentences he might receive. Alternatively, the court noted that this was Williams's second petition for vacation of his sentence on the ground that his plea of guilty had been involuntary, and it denied the petition, stating that the district court has the discretion to deny successive petitions under § 2255.

This appeal followed.

## DISCUSSION

In *Sanders v. United States, supra,* the Supreme Court laid down the fundamental framework for determining whether a repetitive motion for relief under § 2255 may be denied without consideration of its merits:

> Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was

on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

373 U.S. at 15, 83 S.Ct. at 1077 (footnote omitted). Williams contends that the *Sanders* rule did not permit the district court to deny his petition without considering its merits because his present petition rests on a constitutional ground not raised in his first petition and because the ends of justice would be served by reaching the merits of his present petition. We disagree with both contentions.[2]

In explicating the first *Sanders* condition, *i.e.,* that the successive petition present "the same ground" as the prior petition, the Supreme Court defined "ground" as "simply a sufficient legal basis for granting the relief sought by the applicant." *Id.* at 16, 83 S.Ct. at 1077. The Court went on to explain that there may be any of a number of different factual contentions that a prisoner might make that would nevertheless invoke but a single legal "ground." By way of illustration, the Court stated that

> the contention that an involuntary confession was admitted in evidence against [the applicant] is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different "ground" than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations.

*Id.* The Court concluded that, "[s]hould doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant." *Id.*

█ We have no doubt in the present case that the "ground" asserted by Williams in his two § 2255 petitions is the same. The claim in both petitions was that, since he would not have entered his

---

**2.** Since we reach these conclusions, we express no view as to the merits of Williams's claims that the sentencing judge was required to inform him of the parole ramifications of any possible sentence.

plea of guilty had he known what would ensue, his plea was involuntary. Thus, his brief on appeal from the denial of his first petition argued that acceptance of his plea, allegedly entered on the basis of erroneous representations as to the court's sentencing intentions, violated the requirements of Rule 11 and the Constitution "that a plea of guilty be voluntarily made." (*Williams v. United States*, No. 82–2336, Williams brief on appeal dated November 2, 1982, at 6.) In his present brief on appeal, again relying on Rule 11 and the Constitution, Williams states that the issue is "whether the omission of judicial advice about parole ineligibility renders a guilty plea involuntary." (Williams brief on appeal at 15.) The fact that Williams's second petition offers a new factual premise for the claim of involuntariness plainly does not meet the *Sanders* test that the two petitions present different legal grounds.

■ Nor are we persuaded that the ends of justice required the district court to reach the merits of the present petition. Where, as here, a successive § 2255 petition presents the same ground as an earlier petition which was decided on its merits, the burden is on the petitioner to show that the ends of justice warrant the court's consideration of the merits of the successive petition. *Id.* at 17. Williams has failed to make such a showing.

First, Williams has presented no compelling explanation for his failure to assert his present claim of involuntariness in one of his earlier applications for relief from his sentence. The Second Williams Aff., the Second Goldberg Aff., and Williams's brief on this appeal make it clear that Williams was aware on May 7, 1982, the day he was sentenced, that he was ineligible for parole. Yet he waited nearly a year to claim that he had not known of this possibility prior to entering his plea and that he would not have pleaded guilty had he known. In the interim he made two other applications to the court—the first just three days after being sentenced—without once hinting at the pre-plea ignorance he now asserts. Since Williams admittedly knew of his pa-

role ineligibility at the time he made his application for sentence reduction and at the time of his first § 2255 petition, his earlier bypasses of his present argument were plainly deliberate.

The only justification offered for these deliberate bypasses was Goldberg's statement that in 1982 he had advised that a claim of involuntariness based on the court's failure to advise Williams of the parole ramifications of a plea would be rejected, whereas he has recently taken a more optimistic view of such a claim. (Second Goldberg Aff. at 1–2.) Counsel concedes that there has been no change in the law since the filing of the first petition, and we are unpersuaded that the mere fact that "counsel has now altered his opinion" (Williams brief on appeal at 12)—if that was the sole reason for the bypass—was sufficient to require the district court to reach the merits of the present petition.

■ We note further that the nature of Williams's first § 2255 petition suggests another reason for the bypass: that Williams may have thought it a tactical advantage not to make his present argument in that petition. In his first petition Williams claimed that the district court had misled him as to its intentions with respect to the severity of the sentence to be imposed. There Williams said, "I did not take this plea truly believing that the Court would, in light of what occurred in December, impose a maximum sentence." (First Williams Aff. at 3.) It may well be that Williams and his advisors felt that the contention that the judge had indicated that the maximum sentence would not be imposed would be a more appealing argument if it were not accompanied by the argument that in any event Williams did not know what the maximum sentence entailed. The district court plainly is not required to entertain successive petitions presenting an argument in piecemeal fashion for strategic reasons.

Finally, the record on Williams's first § 2255 petition strongly suggests that Williams was well aware prior to entering his plea that he could receive a sentence of life

imprisonment without possibility of parole. That record makes clear that in determining how Williams would plead, Williams and Goldberg were focused squarely on the sentence that had been imposed on Leroy "Nicky" Barnes. Both the First Williams Aff. and the First Goldberg Aff. stated that Goldberg had been assured that the prosecutor would not seek for Williams the same punishment that had been imposed on Barnes. The sentence given Barnes, who also was convicted of conducting a continuing criminal enterprise in violation of § 848, was life imprisonment without possibility of parole, a fact that was notorious. *See, e.g., Barnes Is Sentenced To Life in Drug Case: Harlem Narcotics Figure Draws the Maximum Term Without Parole*, N.Y. Times, Jan. 20, 1978, at A1, col. 1. Thus, although Williams now claims, "Had I been aware that a plea of guilty carried with it the possibility of a sentence which would incarcerate me for the remainder of my life, I would not have pleaded guilty," his evident pre-plea preoccupation with the punishment given to Barnes belies his present assertion.

In sum, the record persuades us that Williams's present petition presented no new ground for relief, that he failed to present any basis for believing that the ends of justice required consideration of the merits of this repetitive petition, and that the district court did not abuse its discretion in refusing to reach the merits.

### CONCLUSION

The order of the district court is affirmed.