UNITED STATES of America, Plaintiff,

v.

Raymond Luc LEVASSEUR, Jaan Karl Laaman, Thomas William Manning, Richard Charles Williams, Carol Ann Manning, Patricia Gros and Barbara Curzi, Defendants.

No. 85 Crim. 143.

United States District Court,
E.D. New York.

Oct. 4, 1985.

Asst. U.S. Atty. John Gallagher, E.D. N.Y., Brooklyn, N.Y., for plaintiff.

William M. Kunstler, New York City, for Thomas William Manning.

Susan Tipograph, Flood, Tipograph & Holmes, New York City, for Gros.

Margaret Ratner, Center for Constitutional Rights, New York City, for Curzi.

Elizabeth Fink, Brooklyn, N.Y., for Carol Ann Manning.

Lynne Stewart, New York City, for Richard Charles Williams.

Jesse Berman, New York City, for Jaan Karl Laaman.

Robert Boyle, Brooklyn, N.Y., Legal Asst. to Levasseur.

Raymond Luc Levasseur, New York City, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GLASSER, District Judge:

The defendants Curzi and Laaman have moved, pursuant to Rule 12(b)(3) of the Fed.R.Crim.P. for an order suppressing physical evidence seized at their residence, 4248 West 22nd Street, Cleveland, Ohio, prior to the issuance of a warrant to search those premises. The physical evidence thus sought to be suppressed consists of 3 weapons found on a shelf on the first floor of that residence; a fourth weapon in a bag on the floor of a second floor bedroom, and a cannister in an open cabinet in the basement. The cannister was wrapped in plastic and a paper-bag, with approximately one-third of it showing, the top blackened.

By way of brief background, the defendants Curzi and Laaman, together with their co-defendants had been the subjects of what has been described in other preliminary proceedings thus far, as one of the largest, if not the largest, manhunt in the history of the country. They were wanted for a series of bombings which are charged in the underlying indictment. Some of the defendants (Thomas Manning and Richard Williams) were wanted for the murder of a New Jersey State Trooper, for the attempted murder of a Massachusetts State Trooper (Laaman) and for bank robbery (Levasseur).

Their presence in the Cleveland, Ohio area in the early days of November caused the convergence on that area of many agents of the F.B.I. from various parts of the country as well as other law enforcement personnel. The house on West 22nd Street was believed to be a place where some or all of the defendants were to be found. After the occupants were notified by loudspeakers of the police presence outside and asked to come out, the defendants Laaman, Curzi, Williams and several children emerged. Shortly after they were taken into custody, Special Agent Ralph J. Young, a SWAT team leader from the Pittsburgh Division of the F.B.I. who, together with members of his team were summoned to Cleveland and were present on the scene when the arrests were made on November 4, 1984, entered the house to ascertain whether there were other persons who were the targets of the manhunt inside.

Special Agent Young testified that he entered the house together with Special Agents Ostronic and Pino. Almost immediately upon entering, he testified, he noted three weapons on the top shelf of a room he described as a dining area. Received in evidence were photographs marked as Exhibits 10 and 11 which depict the condition of that area other than the lighting. Neither Agent Young nor Agents Ostronic or Pino touched those weapons, nor did they touch anything else. There were standing instructions to members of that SWAT team not to touch or move anything.

Those three agents were joined by Special Agent Freiwald and they went to the second floor to make certain that there were no other persons in that portion of the house. Shortly after entering upon the second floor, Agent Young testified that he was alerted by Agent Ostronic that in one of the bedrooms there was a weapon in a bag. Received in evidence was Exhibit 12, an accurate photograph of what Agent Ostronic and Agent Young saw. Pursuant to the standing instructions, nothing was touched or moved. The Agents cleared the attic, closets and other places where persons might be concealed (under beds) and then proceeded to the basement, where they encountered a Doberman Pinscher dog which required the assistance of a canine handler from the Cleveland police to remove. No persons were found in the basement.

Agent Young then testified that after the work of his team was completed, he turned the house over to Special Agents of the Cleveland Field Division of the F.B.I. Agent Young told them at that time that there were three weapons downstairs and one upstairs.

One of the Agents to whom Agent Young relinquished control of the house was Special Agent Richard Wrenn, who was next called as a witness.

Agent Wrenn testified that it was his responsibility to secure the premises until such time as a search warrant was obtained and also to effect a possible arrest of Thomas Manning should he return to the residence. He testified that he (Wrenn) arrived at the house just about the time the SWAT team was leaving and was aware that a protective sweep had been done by them. Agent Wrenn also knew that weapons were found in the home, having heard Agent Young notify another Agent, Agent Drab of that fact. Agent Drab accompanied Wrenn. Notwithstanding that awareness, Agent Young went through the premises immediately upon his entry as was his practice out of concern for his own safety. In the basement he saw a cannister on a

shelf in an open metal cabinet. Approximately one third to one fourth of it was showing. It was wrapped in plastic and what appeared to be a paper sac was also wrapped around it. The top of the cannister appeared to be blackened. He also saw a bit of a label on the cannister and could read the words, "red dot." Agent Wrenn then testified that he thought that what he saw should be examined by someone qualified to handle it and notified Detective Rocco Polutro of the Cleveland Bomb Squad. Agent Wrenn did not move the cannister prior to notifying Detective Polutro nor was he present when the cannister was moved thereafter. Agent Wrenn then left the basement area and never returned there. Agent Wrenn also testified that upon entering the house initially, the weapons in the dining room were plainly visible and he saw the weapon protruding from the bag in the bedroom upstairs. Agent Wrenn remained in that house from the time of his arrival at approximately 11:00 A.M. on November 4th until the evening of November 5th almost without interruption. No search was conducted until after the arrival of the search warrant, which was at approximately 3:00 P.M. on November 5, 1985.

## Discussion

■ In a motion to suppress physical evidence the burden of proof is on the defendant who seeks the suppression. *United States v. Feldman*, 606 F.2d 673 (6th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1648, 64 L.Ed.2d 236 (1980). However, once the defendant has established some basis for the motion, as for example, by a preliminary showing that the search was conducted without a warrant, then the burden shifts to the government to show that the warrantless search was reasonable. *United States v. Sacco*, 563 F.2d 552 (2nd Cir), *cert. denied*, 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1977). The standard of proof in this regard is a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). It is also well settled that the Federal Rules of Evidence are generally not applicable and that hearsay is admissible. Fed.R.Ev. Rules 104(a), 1101(d)(1); *United States v. Matlock, supra.*

The defendants contend that the warrantless presence in their residence of the law enforcement authorities rendered the seizure of the weapons and the cannister an unlawful violation of the Fourth Amendment protection against unreasonable searches and seizures. It should be noted at the outset that the evidence does not establish in any way that the weapons were ever seized until after a search warrant was obtained. The evidence does clearly suggest that the cannister was seized by detectives of the Cleveland Bomb Squad prior to the issuance of the warrant. The Government contends that the law enforcement agents were lawfully on the premises and that the pre-warrant seizure was justified by the plain view doctrine.

### A. Lawfulness of the Police Intrusion

■ It is constantly important to bear in mind that the Fourth Amendment does not prohibit *all* searches. That Amendment protects against *unreasonable* search and seizures. Warrantless entries after an arrest, even where that arrest was made outside the premises, has long been recognized as reasonable where the entry was dictated by a compelling urgency. The background leading up to the events on the morning of November 4, 1984 has already been briefly recounted. The defendants had been the subject of an extensive manhunt which extended over many years. Exiting from the premises in question were only three of those sought. Still at large were the Mannings and possibly others. The defendants were wanted for numerous bombings of government and other buildings extending over a period of seven years and as has been indicated, some of them were also wanted for serious crimes of violence. The police clearly had a reasonable belief that third persons may be inside the house and a reasonable belief that they might destroy evidence or jeopardize the safety of the officers or the public. The conclusion that entry into the house was

necessary, indeed required, by a compelling urgency is inescapable. *See United States v. Bowdach*, 414 F.Supp. 1346, 1352 (S.D. Fla.1976), *aff'd* 561 F.2d 1160 (5th Cir. 1977); *United States v. Sellers*, 520 F.2d 1281 (4th Cir.1975). *See generally* LaFave and Israel, 1 Criminal Procedure, 268–273 (1984).

█ The intrusion upon the premises being clearly lawful, the weapons which were in plain view could properly have been seized although, as has been indicated, they were not until after the search warrant was obtained. The seizure of the cannister in the basement prior to the issuance of the warrant was clearly justified under the plain view doctrine. *Terry v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The defendants attempt to cast doubt upon the "plain view" theory of the government by pointing to an inventory of a search which describes the weapon seen in the second floor bedroom as having been located in a green bag. The testimony of Special Agents Young and Wrenn, when considered together with Exhibit # 12, satisfactorily explains the inventory notation and confirms its correctness, even semantically.

The defendants also point to Master Inventory item numbered 175, attached to the original moving papers as also casting doubt upon the "plain view" assertion. The testimony of Special Agent Wrenn was clear and unequivocal as to where he saw the cannister, its condition when he saw it, and that he did not move it. That testimony also established that the cannister was subsequently moved and examined by members of the Cleveland Police Bomb Squad. The inventory describes what was found after the search warrant was obtained and the inference that it was found where it was because the bomb squad placed it there is a fair and reasonable one.

The search and seizure did not violate the Fourth Amendment and the government has carried its burden in establishing the legality of the search and seizure by evidence which is clear and convincing.

This motion to suppress was incident to a *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) attack upon the affidavit of Special Agent Leonard Cross dated November 5, 1984 executed by him in support of the search warrant which was issued. Paragraph 53 of that affidavit describes the weapons and black powder (the cannister) as having been located in plain sight during the protective sweep. I find that that paragraph does not knowingly and intentionally misrepresent the facts in this regard. On the contrary, I find that the statement is correct. I should add that even if the statement were not accurate, for the reasons given in another Memorandum and Order on the *Franks* motion, there was more than enough lawfully obtained information in the Cross affidavit amounting to probable cause which would have justified the issuance of the warrant and made admissible the evidence seized pursuant to it. *See United States v. Marchand*, 564 F.2d 983, 993 (2d Cir.1977) and *James v. United States*, 418 F.2d 1150 (D.C.Cir.1969).

The foregoing constitutes the Court's findings of fact and conclusions of law.

SO ORDERED.