**Barbara Jean CURZI, Jaan Karl Laaman and Richard C. Williams, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Nos. CR–85–0143, CV–91–0385 and CV–91–1604.**

United States District Court, E.D. New York.

Sept. 13, 1991.

Linda J. Thompson, Salomone & Thompson, Springfield, Mass., for Curzi.

Jaan Karl Laaman, pro se.

Kenneth J. King, Fenn & King, Jamaica Plain, Mass., for Williams.

Charles Rose, Asst. U.S. Atty., Andrew Weissman, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Petitioners move pursuant to 28 U.S.C. § 2255 for an order vacating or setting aside their sentences. The factual back-

ground of this case has been set forth in detail in numerous published decisions. *United States v. Levasseur,* 618 F.Supp. 1390 (E.D.N.Y.1985); *United States v. Levasseur,* 620 F.Supp. 624 (E.D.N.Y.1985); *United States v. Levasseur,* 816 F.2d 37 (2d Cir.1987); *United States v. Levasseur,* 699 F.Supp. 965 (D.Mass.1988); *United States v. Curzi,* 867 F.2d 36 (1st Cir.1989). Familiarity with those decisions is presumed; however, a synopsis of the events most relevant to the instant petition is presented, as follows.

Petitioners were members of a terrorist group which called itself the United Freedom Front. In 1984, following a massive manhunt for the members of the group, federal law enforcement authorities closed in on a neighborhood at West 22nd Street in Cleveland, Ohio, where they had followed petitioner Richard Williams. Agents took up positions on the evening of November 3, 1984 and in the morning of November 4 determined that Williams and possibly other persons were inside the house at 4248 West 22nd Street. After the occupants were notified by loudspeaker of the police presence outside, Laaman, Curzi, Williams and several children emerged. Shortly after they were taken into custody, FBI SWAT team members entered the house to ascertain whether there were other persons inside. During the "protective sweeps" that ensued four weapons and a canister of black powder were discovered in plain view. The weapons were not touched by the agents pending the securing of a search warrant. The canister was seized immediately.

Defendants Laaman and Curzi moved before trial to suppress the weapons and canister on the ground that they were discovered during an illegal warrantless search. Williams did not join this motion. This court declined to suppress the evidence holding that

[t]he conclusion that entering into the house was necessary, indeed required, by a compelling urgency is inescapable. * * * The intrusion upon the premises being clearly lawful, the weapons which were in plain view could properly have been seized although, as has been indicated, they were not until after the search warrant was obtained. The seizure of the canister in the basement prior to the issuance of the warrant was clearly justified under the plain view doctrine.

*United States v. Levasseur,* 618 F.Supp. at 1392–93.

The admissibility of the evidence was also challenged on the ground that the search warrant was invalid. The warrant application was supported by the affidavit of special agent Leonard Cross, dated November 5, 1984. Cross had been assigned in February 1984 to coordinate the ongoing investigation into defendants' terrorist activities. His affidavit, which was detailed and extensive, set forth with precision the criminal activities in which defendants were believed to be involved, the evidence sought, and the nexus between the places to be searched and the items to be seized. In particular, paragraph 53 of the affidavit described the weapons and black powder canister as having been in plain view during the protective sweep. Defendants moved under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) challenging the veracity of material statements in the affidavit. This court concluded with respect to paragraph 53 that it

does not knowingly and intentionally misrepresent the facts in this regard. On the contrary, I find that the statement is correct. I should add that even if the statement were not accurate, ... there was more than enough lawfully obtained information in the Cross affidavit amounting to probable cause which would have justified the issuance of the warrant and made admissible the evidence seized pursuant to it.

*United States v. Levasseur,* 618 F.Supp. at 1393.

After other pretrial activity and a trial in which 160 witnesses were called and some 1500 exhibits were admitted, petitioners Laaman, Curzi, and Williams were found guilty and sentenced to 53 years, 45 years, and 15 years, respectively.

On May 29, 1986, a United States grand jury in the District of Massachusetts indict-

ed the defendants for other acts of violence and terrorism. The defendants moved to suppress the evidence seized from the 4248 West 22nd Street house, and the Massachusetts district court granted the motions citing the agents' failure to obtain a search warrant prior to their initial entry. *United States v. Levasseur*, 699 F.Supp. at 1001. The court held the later warrant-backed search to have been illegal as well: "The problem with their latter search is that the government's affidavit, shorn of the unlawfully obtained information, fails to establish a sufficient nexus between the items to be seized and the place to be searched." *Id.* The First Circuit affirmed this decision. *United States v. Curzi*, 867 F.2d at 38. As to Williams the district court denied the motion on the ground that as a visitor to the house he lacked standing to challenge the search. *United States v. Levasseur*, 699 F.Supp. at 999.[1]

Petitioners now move pursuant to 28 U.S.C. § 2255 to vacate their sentences on the grounds that (1) their convictions were obtained by the use of evidence seized during searches which violated the Fourth Amendment to the Constitution; (2) the failure of Laaman and Curzi's attorneys to appeal the denial of their suppression motion denied them the effective assistance of appellate counsel in violation of the Sixth Amendment to the Constitution; and (3) the failure of Williams' trial counsel to join the suppression motion denied him the effective assistance of trial counsel in violation of the Sixth Amendment to the Constitution.

## I. *The Fourth Amendment Claim.*

### A. Deliberate Bypass

■ It is well-settled that a petitioner's failure to raise a nonconstitutional or nonjurisdictional claim on direct review precludes the assertion of the claim in a collateral proceeding. *Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976); *Sunal v. Large*, 332 U.S. 174, 178–79, 67 S.Ct. 1588, 1590–91, 91

L.Ed. 1982 (1947). A different rule applies to constitutional claims, however, and in the Second Circuit, that rule has been explained as follows:

> With respect to constitutional or jurisdictional claims, we have adhered to the rule that a section 2255 petitioner may raise such claims even though they were not raised on direct appeal, unless there is some showing of deliberate delay or bypass.

*Brennan v. United States*, 867 F.2d 111, 117 (2d Cir.), *cert. denied*, 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989). *See also Chin v. United States*, 622 F.2d 1090, 1093 (2d Cir.1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981); *Pacelli v. United States*, 588 F.2d 360, 362 (2d Cir.1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979); *Williams v. United States*, 463 F.2d 1183 (2d Cir.), *cert. denied*, 409 U.S. 967, 93 S.Ct. 299, 34 L.Ed.2d 232 (1972), all applying the "deliberate bypass" standard to collateral review of constitutional claims not raised on direct appeal. *Cf. Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir.) (applying "cause and prejudice" standard), *cert. denied*, —— U.S. ——, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990); *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir.1989) (same).

■ Both Laaman and Curzi and their attorneys knew of the existence of their Fourth Amendment claim when their direct appeal was taken. They had, of course, unsuccessfully litigated it in a pre-trial suppression motion. On appeal they claimed with specificity other Fourth Amendment errors related to the same search (the *Franks v. Delaware* motion) and to the search of a codefendant's foot locker. Yet the instant claim was not raised and petitioners do not claim they asked their attorneys to do so. *See United States v. Williams*, 615 F.2d 585, 591 (3d Cir.1980).

The conclusion that petitioners deliberately bypassed this claim on appeal is irre-

---

**1.** This interlocutory order was unappealable. Williams' trial resulted in an acquittal on some counts and a mistrial on others; the indictment

against him was dismissed by the government in December 1989. The First Circuit thus never passed on this decision.

sistible.[2] Their decision to present it now rests entirely on their changed perception of their likelihood of success in litigating it, inspired by the contrary decisions of the District Court of Massachusetts and the First Circuit Court of Appeals. However, a change of perception does not nullify the deliberate nature of a bypass. That argument was made and rejected in *Williams v. United States*, 731 F.2d 138 (2d Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 956, 83 L.Ed.2d 963 (1985), where petitioner claimed that the reason he had not raised a constitutional claim on direct appeal or in his prior § 2255 petition was that his attorney had first advised him that the claim would probably be rejected "whereas more recently he has taken a more optimistic view of such a claim." Counsel conceded that there had been no change in the law governing the case. The Second Circuit concluded, "[W]e are unpersuaded that the mere fact that 'counsel has now altered his opinion' ...—if that was the sole reason for the bypass—was sufficient to require the district court to reach the merits of the present petition." *Id.* at 142.

A conclusion of deliberate bypass is also compelled by *Williams v. United States*, 463 F.2d 1183 (2d Cir.1972), where petitioner similarly attempted to raise a fourth amendment claim in a § 2255 petition having omitted to raise it on direct appeal. All the facts surrounding petitioner's warrantless arrest and the search and seizure of evidence incident to the arrest were "fully known by [his] experienced trial and appellate counsel." A pre-trial motion to suppress the fruits of the search was denied. On appeal, petitioner claimed that the scope of the search rendered its fruits inadmissible. The court concluded that "[t]he only conclusion that can be drawn from all of this, particularly the attack on the scope of the search incident to an arrest, is that there was a deliberate by-passing of the orderly federal procedures provided at or before trial and by way of appeal." *Id.* at 1184. *See also United States v. Muhammad*, 824 F.2d 214, 219 (2d Cir.1987), *cert. denied*, 484 U.S. 1013, 108 S.Ct. 716, 98 L.Ed.2d 666 (1988).

■ Williams' attempt to litigate the legality of the search of the Cleveland home for the first time in this proceeding must also fail. Williams did not join in the motion to suppress brought by Laaman and Curzi. Rule 12(f), Fed.R.Crim.P., provides that a defendant's failure to raise a claim which he is required, under Rule 12(b), to raise prior to trial, "shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." That waiver extends to presentation of the claim in a § 2255 proceeding, and similarly requires a showing of "cause" to overcome. *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). A motion to suppress evidence is a claim required by Rule 12(b) to be raised prior to trial. *See* Rule 12(b)(3), Fed.R.Crim.P. Williams offers no explanation for his or his attorney's failure to move to suppress the evidence prior to trial, other than his claim that his counsel was incompetent. That claim is addressed below and is rejected. Thus, as the Second Circuit's discussion of a similar claim in *Indiviglio v. United States*, 612 F.2d 624 (2d Cir.1979), *cert. denied*, 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980) ine-

---

**2.** On August 22, 1991, Barbara Curzi's attorney Margaret Ratner submitted an affidavit in which she explained that responsibility for the development of the appeal of any Fourth Amendment issues was delegated to her associate Ronald Kuby, "a talented, conscientious and experienced criminal defense lawyer." In essence, Ms. Ratner contends that he failed to recognize the grounds for appeal of the claim: the agents' entry into the Cleveland home "by prearrangement" and the principles contained in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). He focused instead on other Fourth Amendment issues. When the brief was ultimately compiled she and other counsel were "then heavily engaged in other pressing legal tasks" causing them to overlook the issue.

The argument Ms. Ratner contends Mr. Kuby—as well as cocounsel Elizabeth Fink, Robert Boyle, Jesse Berman, Lynne Stewart, and William Kunstler—neglected invokes the very rationale ("prearrangement" and *Steagald*) relied upon by the First Circuit in an opinion filed January 30, 1989. *See United States v. Curzi*, 867 F.2d 36 (1st Cir.1989). Her implication that counsels' failure to raise these claim was an inadvertence is, under these circumstances, an unpersuasive one.

luctably demonstrates, Williams is barred from litigating the admissibility of the evidence in this proceeding:

Indiviglio asserts that the necessary showing of "cause" required to excuse the failure to present his Fourth Amendment claim at trial is supplied by the alleged incompetence of his counsel in neglecting to raise this claim at trial. We note that it is irrelevant whether counsel's failure to raise at trial Indiviglio's present Fourth Amendment claim is characterized as a matter of sheer inadvertence or as one of professional judgment that a motion on such grounds would have been unsuccessful,[12] because neither is sufficient to constitute "cause" within the meaning of Rule 12 and *Davis,* even assuming that Indiviglio's present Fourth Amendment claim is meritorious....

Without some showing that counsel's mistakes were so egregious as to amount to a Sixth Amendment violation, a mere allegation of error by counsel is insufficient to establish "cause" to excuse procedural default.

[12] We exclude the possibility that counsel's failure to include this ground in his motion to suppress was intended to be a deliberate strategic maneuver, for we can perceive no tactical advantage to be gained thereby.

*Id.* at 631. *See also United States v. West,* 494 F.2d 1314, 1315 (2d Cir.) (Fourth Amendment claim barred from litigation in § 2255 proceeding where not raised at trial or in a motion for new trial or on appeal), *cert. denied,* 419 U.S. 899, 95 S.Ct. 180, 42 L.Ed.2d 144 (1974).

B. Scope of Review under § 2255

■ Petitioners' Fourth Amendment claims must be rejected for another reason. In *Stone v. Powell,* 428 U.S. 465, 481–82, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976), the Supreme Court held that a state prisoner may not seek habeas corpus relief on the ground that evidence used against him was obtained in violation of the Fourth Amendment. While this holding was limited to claims brought by state prisoners under 28 U.S.C. § 2254, and the Court in *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct.

1068, 22 L.Ed.2d 227 (1969) had, only seven years earlier, expressly held that Fourth Amendment violations could indeed provide a basis for relief to a federal prisoner under § 2255, given the coextensive coverage of § 2254 and § 2255 this court is hard-pressed to find any principled reason for not applying *Stone v. Powell* to the Fourth Amendment claims of federal prisoners. *See Davis v. United States,* 417 U.S. 333, 344, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974) ("[T]here can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254...."). Justice Brennan, who authored the Court's opinion in *Kaufman,* predicted this result writing in dissent in *Stone v. Powell:*

Although the Court does not expressly overrule *Kaufman v. United States,* 394 U.S. 217 [89 S.Ct. 1068, 22 L.Ed.2d 227] (1969), and its progeny involving collateral review of Fourth Amendment claims of federal prisoners (indeed, the Court accomplishes today's result without expressly overruling or distinguishing *any* of our diametrically contrary precedents), *Kaufman* obviously does not survive.

*Stone v. Powell,* 428 U.S. at 519 n. 14, 96 S.Ct. at 3064 n. 14 (Brennan, J., dissenting). A subsequent remark by the Court is of similar import:

After *Stone v. Powell,* 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067] (1976), the only cases raising Fourth Amendment challenges on collateral attack are those federal habeas corpus cases in which the State has failed to provide a state prisoner with an opportunity for full and fair litigation of his claim, analogous federal cases under 28 U.S.C. § 2255, and collateral challenges by state prisoners to their state convictions under postconviction relief statutes that continue to recognize Fourth Amendment claims.

*United States v. Johnson,* 457 U.S. 537, 562 n. 20, 102 S.Ct. 2579, 2594 n. 20, 73 L.Ed.2d 202 (1982). *See also United States v. Byers,* 740 F.2d 1104, 1137 n. 90 (D.C.Cir.1984) (Robinson, C.J., concurring in the judgment) ("Because § 2255 relief is available only on grounds that would support an application for a writ of habeas

corpus ... the *Stone* rule seems clearly applicable to a federal prisoner seeking relief under § 2255."); C. Wright, 3 *Federal Practice and Procedure* 453, § 594 (1982 ed.) ("The [*Stone v. Powell*] rule surely must apply to a federal prisoner seeking relief under § 2255, and it will only be in a highly unusual case in which there was not a full and fair opportunity to litigate the Fourth Amendment claim in the original trial and appeal that it will be raisable on motion." (Footnotes omitted)).

Petitioners do not claim that they were denied the full and fair opportunity to litigate their Fourth Amendment claims at any stage of the proceedings against them. Williams was accorded the opportunity prior to trial and declined. Laaman and Curzi pressed the claim, and after a hearing the court made findings of fact and conclusions of law in a published decision to which the reader has already been referred. These proceedings need not be scrutinized. *Kaufman v. United States*, 394 U.S. at 227, 89 S.Ct. at 1074 ("[Review of] 'the fact-finding procedure' ... does not apply in the case of a federal prisoner; federal fact-finding procedures are by hypothesis adequate to assure the integrity of the underlying constitutional rights."). Petitioners' opportunity to appeal the court's determination is likewise unassailable.

Petitioner's Fourth Amendment claims are thus barred from litigation in this proceeding and are, accordingly, dismissed.

## II. *Ineffective Assistance of Counsel*

### A. Appellate Counsel

■ In seeking to demonstrate that they were denied the effective assistance of appellate counsel, Laaman and Curzi fault their attorneys' decision not to appeal the denial of the motion to suppress the evidence recovered in the Cleveland house. This is their only criticism, however; they are apparently content with all other aspects of their attorneys' performance both at trial and on appeal. This of course would include the conduct of the suppression motion they now seek to overturn.

As a group, counsels' representation was energetic, expert, and at times resourceful.

They undertook diligently to consult with defendants in preparation for pre-trial motions and trial, moving successfully to abrogate the restrictions on visitation of defendants which the Warden of the Metropolitan Correctional Center had imposed. *See United States v. Levasseur*, 85 CR 0143, slip op. (E.D.N.Y. July 12, 1985). They moved, unsuccessfully, to compel production of statements and information obtained from defendants' children as well as for the suppression and that of any other evidence obtained therefrom. *See United States v. Levasseur*, 85 CR 0143, slip op. (E.D.N.Y. Oct. 15, 1985). They moved, unsuccessfully, to quash outstanding grand jury subpoenas and impound grand jury evidence in the District of Massachusetts. *See United States v. Levasseur*, 85 CR 0143, slip op. (E.D.N.Y. Oct. 15, 1985). Counsel for Curzi and Laaman moved to suppress evidence pertaining to their identification. The motion as to Curzi was withdrawn, but that as to Laaman was pressed by counsel, and was denied. *See United States v. Levasseur*, 85 CR 0143, slip op. (E.D.N.Y. Dec. 11, 1985). Counsel for Laaman and Curzi moved to suppress the evidence found in plain view in the house at 4248 West 22nd Street as well as all evidence recovered by virtue of the November 5, 1984 search warrant, unsuccessfully. *See United States v. Levasseur*, 618 F.Supp. 1390 (E.D.N.Y.1985); *United States v. Levasseur*, 619 F.Supp. 775, 784 (E.D.N.Y.1985). Counsel also applied for a writ of habeas corpus ad testificandum for potential defense witnesses incarcerated in other jurisdictions. The writ as to one witness was ordered executed, and those as to the other three were vacated. *See United States v. Levasseur*, 85 CR 0143, slip op. (E.D.N.Y. Jan. 23, 1986).

Defendants' trial counsel conducted extensive cross-examinations and made numerous evidentiary objections. They presented witnesses on behalf of the defendants some of whom testified that they had observed "suspicious" persons near the scenes of the bombings whose descriptions did not match the defendants'. They presented the theory that defendants were being tried not because they participated in

the acts charged in the indictment, but because they espoused political beliefs considered dangerous or offensive to the United States government.

On appeal, all three petitioners were represented by the attorneys who had been their trial counsel. The following claims of error were pressed: the trial court improperly failed to order a hearing on the *Franks v. Delaware* motion and that all evidence obtained under the November 5 search warrant should have been suppressed; evidence obtained during a warrantless search of a footlocker in co-defendants' Jefferson, Ohio residence should have been suppressed; there was insufficient evidence to convict Curzi; the trial court's acceptance of partial verdicts was improper; the verdicts were coerced by the trial court's delivery of an *Allen* charge; the trial court abused its discretion in refusing to declare a mistrial when a juror announced that he was scheduled to attend a meeting at the site of one of the bombings; the admission into evidence of certain notebooks violated the confrontation clause of the Sixth Amendment; and the admission of testimony of an FBI agent regarding defendants' use of codes was improper. *See United States v. Levasseur*, 816 F.2d 37 (2d Cir.1987). The Second Circuit rejected all claims, including those alleging Fourth Amendment violations, and affirmed the convictions.

■ Petitioners' claim of ineffective assistance of appellate counsel must be judged according to the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990) ("Although the *Strickland v. Washington* test was enunciated in the context of a claim of inadequate representation arising from an attorney's performance at trial, it is also applicable to claims directed to appellate representation."). Under *Strickland*, a defendant seeking to demonstrate that her attorney provided ineffective assistance must show two things. First, defendant must show "that counsel's performance was deficient," that is, the attorney "made

errors so serious" that the representation fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. at 2064. Second, defendant must show that there is a reasonable probability that, absent the errors, the outcome of the proceeding would have been different. *Id.* at 695, 104 S.Ct. at 2068–69. *See also United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir.1990); *Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir.1987).

*Strickland* requires that a court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. It must bear in mind that "[t]here are countless ways to provide effective assistance in any given case," *id.*, and that the lack of success of a chosen strategy should not cause a court to second-guess an attorney's reasonable judgments. *Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987). Moreover, "[t]he reasonableness of counsel's performance is to be evaluated *from counsel's perspective at the time of the alleged error* and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) (emphasis added).

■ In pursuing an appeal appellate counsel cannot be faulted for not pursuing every possible claim of error. *Jones v. Barnes*, 463 U.S. 745, 752, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). Moreover, although petitioners here do not contend that they urged counsel to argue the illegality of the search of the Cleveland residence on appeal, it is instructive to note that appellate counsel cannot be faulted for not pursuing even claims which his or her client presses him to pursue. *Id.* at 751, 103 S.Ct. at 3312–13. It is worth quoting at some length the Supreme Court's discussion of this point in *Jones v. Barnes* of the obligations of appellate counsel:

Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one

central issue if possible, or at most on a few key issues. Justice Jackson, after observing appellate advocates for many years, stated:

"One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.... [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one." Jackson, Advocacy Before the United States Supreme Court, 25 Temple L.Q. 115, 119 (1951).

Justice Jackson's observation echoes the advice of countless advocates before him and since. An authoritative work on appellate practice observes:

"Most cases present only one, two, or three significant questions.... Usually, ... if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention. The effect of adding weak arguments will be to dilute the force of the stronger ones." R. Stern, Appellate Practice in the United States 266 (1981).

There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts—often to as little as 15 minutes—and when page limits on briefs are widely imposed. See, e.g., Fed.Rule App. Proc. 28(g); McKinney's New York Rules of Court §§ 670.17(g)(2), 670.22 (1982). Even in a court that imposes no time or page limits, however, the new per se rule laid down by the Court of Ap-

peals is contrary to all experience and logic. A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, "go for the jugular," Davis, The Argument of an Appeal, 26 A.B.A.J. 895, 897 (1940)—in a verbal mound made up of strong and weak contentions. See generally, e.g., Godbold, Twenty Pages and Twenty Minutes—Effective Advocacy on Appeal, 30 Sw. L.J. 801 (1976).

Jones v. Barnes, 463 U.S. at 751–53, 103 S.Ct. at 3312–13 (footnotes omitted). The Court concluded with a warning that judges ought not "second-guess reasonable professional judgments" of appellate counsel as to what are the most promising issues for appeal. Id. at 754, 103 S.Ct. at 3314. See also Tsirizotakis v. LeFevre, 736 F.2d 57, 65 (2d Cir.1984).

As noted, the question of the legality of the search of the Cleveland residence was fully litigated in a pre-trial suppression hearing. This court's findings of fact and conclusions of law are set out in a published decision, United States v. Levasseur, 618 F.Supp. 1390 (E.D.N.Y.1985). It held that because the whereabouts of additional suspects wanted for numerous bombings and other crimes were still unknown,

[t]he police clearly had a reasonable belief that third persons may be inside the house and a reasonable belief that they might destroy evidence or jeopardize the safety of the officers or the public. The conclusion that entry into the house was necessary, indeed required, by a compelling urgency is inescapable....

Id. at 1392–93 (citations omitted). The court then concluded:

The intrusion upon the premises being clearly lawful, the weapons which were in plain view could properly have been seized, although ... they were not until after the search warrant was obtained. The seizure of the canister in the basement prior to the issuance of the search warrant was clearly justified under the plain view doctrine.

Id. at 1393.

Although with perfect hindsight it is now known that at least two courts, the District

Court of Massachusetts and the First Circuit, took a different view of these events, it cannot be said in light of the principles discussed above that counsel's decision not to press the question of this search on appeal to the Second Circuit was anything less than a reasoned and reasonable judgment about appellate strategy in a case in which the proceedings were voluminous and the possible grounds for appeal were, if not strong, at least numerous. Following the directive of *Strickland*, I find that considering all the relevant circumstances from the perspective of counsel at the time the decision was made, this decision was "the result of reasonable professional judgment" and that the omission to raise the claim was not "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. *See also United States ex rel. Roche v. Scully*, 739 F.2d 739, 743–44 (2d Cir.1984). The strong deference *Strickland* requires hardly need be exercised here, as it is not at all clear even with hindsight that there is a reasonable probability the claim would have been successful had it been presented to the Second Circuit.

## B. Trial Counsel

■ Williams did not raise his Sixth Amendment claim of ineffective assistance of counsel at trial or on direct appeal. However, this does not preclude his raising the issue in a collateral attack. *See United States v. Dukes*, 727 F.2d 34, 40 (2d Cir. 1984) ("the usual method of challenging trial counsel's performance is through a collateral attack on the conviction"), *citing United States v. Aulet*, 618 F.2d 182 (2d Cir.1980).

■ Failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 2587–88, 91 L.Ed.2d 305 (1986). In addressing the first prong of the *Strickland* test, counsel's competence is presumed and "the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Id.* As the Supreme Court stated in *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. However, ineffectiveness may be shown by demonstrating that counsel failed "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v. Morrison*, 477 U.S. at 385, 106 S.Ct. at 2588; *United States v. Matos*, 905 F.2d 30, 33 (2d Cir.1990). Under the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.

Defense counsel "is not required automatically to file a suppression motion in every case involving evidence or statements obtained after a search; rather, counsel must use 'professional discretion in deciding whether there are sufficient grounds' for such a motion." *United States v. Aulet*, 618 F.2d 182, 187–88 (2d Cir.1980). It has been pointed out that a contrary rule might cause defense attorney's to file a suppression motion no matter how tenuous the grounds supporting it simply for counsel's own protection. *See LiPuma v. Commissioner, Dep't of Corrections*, 560 F.2d 84, 93 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977). Thus, to prevail on a claim of ineffective assistance of counsel for failure to bring a suppression motion the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed. *United States v. Matos*, 905 F.2d 30, 32 (2d Cir.1990); *United States v. Cruz*, 785 F.2d 399, 405–06 (2d Cir.1986). In addition defendant must show that counsel's decision not to bring the motion was unreasonable under prevailing professional

norms. *United States v. Matos*, 905 F.2d at 32.

As noted earlier, the failure to bring this motion is Williams' sole basis for this Sixth Amendment claim. No other error in counsel's performance is alleged, despite numerous pretrial motions, an extended trial, and an appeal prosecuted by the same attorney. He does not claim he ever urged counsel to bring this suppression motion; nor does he claim counsel was ignorant of or failed to investigate the law or the facts relevant to the motion. Like his co-petitioners', his claim is predicated entirely on the view of the issue taken by the District Court of Massachusetts and the First Circuit. Considering the prejudice prong first, it is clear that Williams has not demonstrated that there is a reasonable probability that the outcome of the proceeding would have been different. Firstly, his reliance on the outcome of his motion in the Massachusetts proceeding is somewhat incredible, since the Massachusetts District Court held that he lacked standing to challenge the search of the Cleveland house. *United States v. Levasseur*, 699 F.Supp. at 999. Second, the same motion was brought by his codefendants in this court and was rejected on substantive grounds in unequivocal terms. The court found "inescapable" the conclusion that the entry into the house was "necessary, indeed required, by a compelling urgency." It found that the intrusion was "clearly lawful," and that the seizure of the canister was "clearly justified." This fact alone renders this Sixth Amendment claim not viable under the prejudice prong of the *Strickland* test. *See United States v. Cruz*, 785 F.2d at 406 ("[E]ven if trial counsel had moved to suppress the evidence, there is little likelihood that the motion would have succeeded, and appellant therefore fails to meet the 'prejudice' prong of *Strickland*."). Lastly, even if the motion had been made and granted and the evidence found in the protective sweep suppressed, that same evidence would still have been admissible by virtue of its lawful seizure under the search warrant, since the court held that the Cross affidavit absent the material describing the weapons and

canister would have supported the issuance of a search warrant. *United States v. Levasseur*, 618 F.Supp. at 1393.

Counsel's decision whether or not to join the suppression motion involved a judgment about his standing to bring it, the potential merits of the motion and the value of a victory. To win on the merits Williams had to overcome two hurdles: he not only had to convince the court that the search was unreasonable, but also that, as a guest in Laaman and Curzi's home, he had standing to assert such a claim. Given that the District Court of Massachusetts ruled that he did not have standing to bring the motion, that this court rejected the motion as presented by Laaman and Curzi, and that this court's holding that the Cross affidavit would have supported a search warrant in any event would have rendered any victory of no consequence, counsel's decision even in retrospect was a perfectly reasonable exercise of professional judgment, and fails to meet *Strickland*'s standard of incompetence.

### III. *Conclusion*

For all the foregoing reasons the petitions are denied.

SO ORDERED.