**Jaan Karl LAAMAN, Plaintiff–Appellant,**

**Richard C. Williams; Barbara Jean Curzi, Petitioners–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Nos. 1412, 1254 and 1291, Dockets 91–2547, 91–2558 and 91–2581.**

United States Court of Appeals, Second Circuit.

Argued March 31, 1992.

Decided Aug. 19, 1992.

Richard W. Berne, Bronx, N.Y. (Brown, Berne & Serra, of counsel), for plaintiff-appellant.

Kenneth J. King, Jamaica Plain, Mass. (Fenn & King, Jamaica Plain, Mass. and Daniel L. Meyers, New York City, of counsel), for petitioner-appellant Williams.

Linda J. Thompson, Springfield, Mass. (John M. Thompson, Salomone & Thompson, Springfield, Mass. and Lee Ginsberg, Freeman, Nooter & Ginsberg, New York City, of counsel), for petitioner-appellant Curzi.

Andrew Weissmann, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. and Susan Corkery, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before: KEARSE and MAHONEY, Circuit Judges, and METZNER, District Judge.*

MAHONEY, Circuit Judge:

Plaintiff-appellant Jaan Karl Laaman, petitioner-appellant Richard C. Williams, and petitioner-appellant Barbara Jean Curzi (collectively "petitioners") appeal from an order of the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge*, entered September 17, 1991 that denied their petitions to vacate or set aside their sentences pursuant to 28 U.S.C. § 2255 (1988). *See Curzi v. United States*, 773 F.Supp. 535 (E.D.N.Y.1991) (memorandum and order of the district court).

Petitioners, along with three codefendants, had been convicted of conspiring to bomb a number of military offices and buildings used in interstate commerce in violation of 18 U.S.C. § 371 (1988), and several counts of bombing specific buildings in violation of 18 U.S.C. § 844(f), (i) (1988). In their petitions for collateral review, they allege that: (1) critical evidence used against them at trial was the product of a search conducted in violation of the Fourth Amendment; and (2) counsel in the original proceedings were ineffective under the Sixth Amendment for failing adequately to pursue the Fourth Amendment claim.

We affirm the district court's denial of § 2255 relief.

## Background

The activities of the petitioners and the judicial proceedings resulting therefrom

---

* The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation.

have been the subject of numerous published opinions in the federal courts of this circuit and the First Circuit, familiarity with which is assumed. Those pertinent here (in addition to the opinion from which this appeal is taken) are *United States v. Curzi*, 867 F.2d 36 (1st Cir.1989); *United States v. Levasseur*, 816 F.2d 37 (2d Cir. 1987); *United States v. Levasseur*, 699 F.Supp. 995 (D.Mass.1988), *aff'd*, 867 F.2d 36 (1st Cir.1989); *United States v. Levasseur*, 699 F.Supp. 965 (D.Mass.1988); *United States v. Levasseur*, 619 F.Supp. 775 (E.D.N.Y.1985), *aff'd*, 816 F.2d 37 (2d Cir. 1987); and *United States v. Levasseur*, 618 F.Supp. 1390 (E.D.N.Y.1985).

Laaman, Williams, and Curzi, who is Laaman's wife, were members of a domestic terrorist organization styled the United Freedom Front ("UFF"). Other members included Raymond Levasseur, Carol Ann Manning, Thomas William Manning, and Patricia Gros. In the late 1970s and early 1980s, members of the UFF were wanted for numerous bombings of buildings and offices, government and private, related to the military establishment; the murder of a New Jersey state trooper in 1981; the attempted murder of two Massachusetts state troopers in 1982; and several armed bank robberies. Accordingly, they were the subject of a massive dragnet. This ultimately led to petitioners' apprehension in Cleveland, Ohio on November 4, 1984. We quote the description of that event provided by the First Circuit, because it highlights aspects which will become pertinent to our subsequent discussion of the legal issues in this case.

In the course of an ongoing manhunt for the terrorists, the FBI spotted Patricia Gros, another suspected gang member. Agents tracked her to a dwelling in Deerfield, Ohio which she shared with Levasseur. Surveillance was established. Agents saw Williams leave the Gros/Levasseur residence in his car on the evening of November 3, 1984. He was followed to Cleveland and trailed to the "4200 block" on West 22d Street. Although the agents did not see which building Williams entered, they cordoned off the entire block during the night. A cadre of law enforcement officers was assembled, including SWAT teams from as far away as Pittsburgh.

Early on the morning of November 4, the FBI received a telephone-trace report which showed that Williams, while en route to Cleveland, had called 4248 W. 22d St. At this point—approximately 8:00 a.m.—official attention focused on the single family home at that address. The surrounding houses were evacuated and more than 35 officers, all armed and many clad in bullet-proof vests, took their places. Roughly half an hour later, at about 8:30 a.m., Williams's hideaway was precisely confirmed; agents saw him leave the house, retrieve something from his parked car, and reenter the premises. The dragnet remained in place. No endeavor was made to procure a search warrant, but there was an attempt to ascertain the homeowner's identity. The agents were able to learn that the telephone number which Williams had called was listed to one Lisa Owens. The name meant nothing to the FBI; the agents could not connect it with the gang or with any criminal activity. They remained completely in the dark as to whether anyone other than Williams was on the premises.

By 10:15 a.m., there had been no material change in circumstances. The FBI chose that moment, however, to escalate the drama into its next stage. An agent telephoned Owens's number and ordered the "occupants"—whoever they might prove to be—to exit. After a short delay, during which several more orders were issued, three children debouched; Williams, Curzi, and Laaman soon followed. The adults were immediately arrested (the two men on outstanding warrants; [Curzi] on a charge of harboring). Without pausing, the agents entered the dwelling and carried out a security check. They found guns and explosives in plain sight. Later, the FBI obtained a warrant authorizing a full-scale search of the premises. The underlying affidavit relied heavily upon Laaman's arrest out-

side the house and the items discovered in the course of the protective sweep. 867 F.2d at 37–38.

### A. *The Direct Proceedings in the Second Circuit.*

Petitioners and their codefendants were then indicted on the conspiracy and bombing charges described *supra.* Prior to trial, Laaman and Curzi moved to suppress evidence seized from the West 22nd Street residence (the "Cleveland Residence") as the product of an illegal search.[1] The district court issued two opinions that addressed different aspects of that motion. Initially, the court ruled (the "Entry Ruling") that the sweep of the Cleveland Residence conducted by the police immediately after the arrest of the petitioners was properly incident to the arrest, stating:

> Exiting from the premises in question were only three of those sought. Still at large were the Mannings and possibly others. The defendants were wanted for numerous bombings of government and other buildings extending over a period of seven years and as has been indicated, some of them were also wanted for serious crimes of violence. The police clearly had a reasonable belief that third persons may [sic] be inside the house and a reasonable belief that they might destroy evidence or jeopardize the safety of the officers or the public. The conclusion that entry into the house was necessary, indeed required, by a compelling urgency is inescapable.

618 F.Supp. at 1392–93. The court also ruled that four weapons and a cannister apparently containing explosive powder that were discovered during the initial sweep were subject to seizure under the "plain view" doctrine, although only the cannister was actually seized prior to obtaining a search warrant. *Id.* at 1393.

As relevant here, the court's subsequent decision addressed defendants' contentions that (1) the warrant to search the premises had been based upon an affidavit by F.B.I. agent Leonard C. Cross (the "Cross Affidavit") that "contained statements which were knowingly and intentionally false or made by [Cross] with a reckless disregard for the truth and that a hearing to test their contentions [was] required by *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978);" and (2) "the [Cross Affidavit] failed to establish any connection between the items sought to be seized and the places to be searched." 619 F.Supp. at 778. Although noting that the affidavit omitted material adverse information concerning a government informant, *id.* at 783–84, the court concluded that "after putting those aside, there remain[ed] a residue of independent and lawful information sufficient to support probable cause," *id.* at 784 (citing *United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.), *cert. denied,* 474 U.S. 841, 1032, 106 S.Ct. 124, 125, 592, 88 L.Ed.2d 102, 572 (1985)), and ruled adversely to defendants' claims. *Id.* 619 F.Supp. at 792.

We affirmed the second ruling on appeal, holding that "despite our concern that the Cross Affidavit may have seriously understated the factors that would call into question [the informant's] reliability, we conclude that the district court properly denied the *Franks* motion without a hearing." 816 F.2d at 44. We noted that the Entry Ruling had not been contested on appeal. *Id.* at 42.

### B. *The Proceedings in the First Circuit.*

Petitioners and others were indicted in the District of Massachusetts on May 29, 1986 for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (1988), conspiracy to commit the violation, *id.* § 1962(d) (1988), and seditious conspiracy, *id.* § 2384 (1988). *See* 699 F.Supp. at 968. The defendants moved to suppress evi-

---

**1.** The government contends that Williams joined in this motion, pointing out that the notice of the suppression motion was filed on behalf of "the defendants," and that a defense lawyer asserted at the hearing on the motion that it was made on behalf of "all defendants."

Williams responds that the primary supporting affidavit makes clear that as to Williams, the motion to suppress related only to evidence seized from his vehicle. We agree with Williams.

dence seized from the Cleveland Residence on a number of grounds, one of which was that the Cross Affidavit "contained material omissions that were intentionally or recklessly made." *Id.* at 979. The government contended that the doctrine of collateral estoppel precluded this attack, in view of the prior rulings in this circuit. *Id.* at 980. After asserting that "the applicable law must be identical in both proceedings" in order for collateral estoppel to be invoked, *id.* at 981, the district court ruled that petitioners were barred from litigating grounds for suppression previously advanced here, *id.* at 982, 988, but could litigate new grounds in the District of Massachusetts. *Id.* The court then proceeded to address the new arguments, rejecting most of them. *Id.* at 982–89.

In a subsequent opinion, however, the district court addressed petitioners' claim, directed to the Entry Ruling, that the evidence seized from the Cleveland residence should be suppressed because of "the failure of law enforcement agents to secure a search warrant for the [Cleveland Residence] before ordering all occupants therein to exit." 699 F.Supp. at 996. The court ruled in favor of Laaman and Curzi on that claim, suppressing all of the seized evidence, *id.* at 1002, 1009, but adversely to Williams because only Laaman and Curzi were deemed to have standing as residents to challenge the seizure. *Id.* at 999.

The court rejected the government's contention that petitioners were collaterally estopped on the issue, asserting that it was required to "interpret the controlling law to determine if it is the same as the law as interpreted by the Eastern District," and concluding that *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), required a ruling opposite to that determined in the Eastern District of New York. 699 F.Supp. at 997. *Steagald* held that in the absence of exigent circumstances or consent, a law enforcement officer could not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. 451 U.S. at 205–06, 101 S.Ct. at 1644. The district court concluded that the police had sufficient time to secure a search warrant, so exigent circumstances were not presented. 699 F.Supp. at 999. As a result, "the order to Jaan Laaman and Barbara Curzi–Laaman to exit the house, an order which effectively and practically constituted a search for them and resulted in their immediate seizure, was unlawful." *Id.* at 1000. Once the knowledge derived from the unlawful arrests was disregarded as "fruit of the poisonous tree," the court saw no adequate basis for the protective sweep of the Cleveland Residence. *Id.* at 100–01. Similarly, once the weapons and cannister of explosive powder located in plain view were disregarded, the fruits of the subsequent warrant-authorized search were suppressed because "the government's affidavit, shorn of the unlawfully obtained information, fails to establish a sufficient nexus between the items to be seized and the place to be searched." *Id.* at 1001.

The government pursued an interlocutory appeal pursuant to 18 U.S.C. § 3731 (1988) only as to Curzi.[2] The government abandoned any collateral estoppel argument on appeal. 867 F.2d at 37 n. 1. The First Circuit affirmed. *Id.* at 46. Unlike the district court, it did not evaluate the legality of the order to exit and the protective sweep separately, regarding the sweep as planned in advance. *Id.* at 39–40. The court of appeals noted that the officers (1) had missed a "golden opportunity" to arrest Williams when he went to his car outside the Cleveland Residence at 8:30 a.m., *id.* at 40, and (2) thereafter "also abjured the option of ordering Williams alone to exit, instead ordering all occupants to leave the premises." *Id.* at 40 n. 4. The court ruled that no exigent circumstances

---

**2.** The charges against Laaman, who had been sentenced to fifty-three years imprisonment in the prior Second Circuit litigation, were dropped. *See* 867 F.2d at 37 n. 1. Although Williams, whose prior sentence was forty-five years, was not a beneficiary of the suppression ruling, he too was never tried in the District of Massachusetts. The appeal was pursued, however, as to Curzi, whose prior sentence was fifteen years. She is currently released on parole.

were presented, because a search warrant could have been obtained in the interval between 8:30 a.m., when Williams' presence at the Cleveland Residence was confirmed by his brief visit to his car, and 10:15 a.m., when the occupants were ordered to exit the premises. *Id.* at 42–43. The court deemed the failure to obtain a search warrant "inexcusable," *id.* at 43, and refused to consider the government's argument of inevitable discovery because it had not been made below. *Id.* at 43–44. The court agreed with the district court's rulings as to the applicability of *Steagald, id.* at 39, and the inadequacy of the affidavit supporting the search warrant, shorn of the fruits of the prior illegalities. *Id.* at 45–46.

## C. The Collateral Proceedings in the Second Circuit.

Having secured this victory in the First Circuit, petitioners moved pursuant to § 2255 for an order vacating or setting aside their sentences here on the grounds that: (1) their convictions were obtained by the use of evidence seized in violation of the Fourth Amendment; (2) the failure of appellate counsel for Laaman and Curzi to appeal the Entry Ruling [3] constituted ineffective assistance of counsel under the Sixth Amendment; and (3) the failure of trial counsel for Williams to join in the challenge to the Entry Ruling, *see supra* note 1, constituted ineffective assistance of counsel under the Sixth Amendment. *See* 773 F.Supp. at 538. The district court denied the petitions, ruling that: (1) Laaman and Curzi deliberately bypassed appellate review of the Fourth Amendment claim for which they now contend (*see supra* note 3), *id.* at 538–39; (2) Williams waived any suppression claim, *see* Fed.R.Crim.P. 12(b)(3), by failing to join in the trial motion by Laaman and Curzi, *id.* at 539–40; (3) petitioners' Fourth Amendment claims are not cognizable on federal habeas review, *id.* at 540–41; and (4) none of the petitioners'

counsel performed ineffectively on appeal or at trial. *Id.* at 541–45.

This appeal followed.

### Discussion

#### A. Preliminary Matters.

The crux of petitioners' position is that the arguments made in the First Circuit would have prevailed if made here, and that only the ineffectiveness of appellate and trial counsel prevented that from happening. Indeed, Curzi asserts that we are collaterally estopped by the determinations in the First Circuit. We disagree.

■ If any estoppel were operative, it might more appropriately have inhibited the district court in Massachusetts from deciding the suppression issue differently from the prior decision here solely because a new argument was advanced, and a new precedent invoked, on the identical issue in Massachusetts. Collateral estoppel does not turn upon a determination that a prior ruling was *correctly* rendered, or that all possibly relevant arguments were made and authorities cited in the initial proceeding, but rather upon a recognition that an issue tendered for resolution in a later litigation has been finally determined in a prior adjudication after a full and fair opportunity for litigation in which the issue was actually litigated and necessary to the prior decision. *See, e.g., John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers,* 913 F.2d 544, 562 n. 16 (8th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991); *In re Lewisville Properties, Inc. (Gray v. Cauble),* 849 F.2d 946, 949 (5th Cir.1988); *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986); *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

3. As noted *supra,* petitioners contended on direct appeal to this court that the search warrant was impermissibly premised upon the Cross Affidavit, which was materially false and misleading, *see* 816 F.2d at 43–44, but did not challenge

the district court's Entry Ruling that (1) the protective sweep was valid, and (2) the weapons and cannister were subject to seizure under the "plain view" doctrine. *See id.* at 42.

■ More specifically, a prior decision by another court on a motion to suppress is not ordinarily reconsidered in the absence of substantial new evidence or extraordinary circumstances. *See United States v. Kaye*, 432 F.2d 647, 650 (D.C.Cir.1970) (per curiam) (Bazelon, C.J., concurring); *United States v. Whiting*, 311 F.2d 191, 196 (4th Cir.1962), *cert. denied*, 372 U.S. 935, 83 S.Ct. 882, 9 L.Ed.2d 766 (1963); *United States v. Wheeler*, 256 F.2d 745, 746–48 (3d Cir.), *cert. denied*, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958); *Mayo v. United States*, 425 F.Supp. 119, 121–22 (N.D.Ill. 1977). *See generally* 4 Wayne R. LeFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 11.2(g) (2d ed. 1987 & Supp.1991). *But see United States v. Stelten*, 867 F.2d 446, 450–51 (8th Cir.) (acknowledging binding force of prior Tenth Circuit ruling suppressing evidence because of warrants' lack of particularity, but allowing admission of evidence because of law enforcement officers' objectively reasonable reliance upon same warrants), *cert. denied*, 493 U.S. 828, 110 S.Ct. 95, 107 L.Ed.2d 59 (1989).

■ In any event, whether or not the district court in the District of Massachusetts should have accorded preclusive effect to the prior rulings in this circuit regarding suppression of the evidence seized from the Cleveland Residence, we regard those rulings as an extraordinary circumstance that relieves us of any obligation to give binding effect to the First Circuit determinations. We note also our recent observation that "as a general matter, collateral estoppel is less liberally applied in criminal cases than in civil actions, because 'considerations peculiar to [the criminal process] may outweigh the need to avoid repetitive litigation.'" *Pinkney v. Keane*, 920 F.2d 1090, 1096 (2d Cir.1990) (quoting *People v. Plevy*, 52 N.Y.2d 58, 64, 417 N.E.2d 518, 521–22, 436 N.Y.S.2d 224, 228 (1980) (alteration in *Pinkney*)), *cert. denied*, —— U.S. ——, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991). We accordingly turn to the merits.

■ Laaman and Curzi argue that the failure of counsel on appeal adequately to litigate their Fourth Amendment claim by specifically challenging the Entry Ruling constitutes ineffective assistance of counsel in violation of the Sixth Amendment. *See Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985) (recognizing right to effective assistance of counsel on appeal). Williams argues that the failure of his trial counsel to join in the suppression motion (as directed to the Entry Ruling) similarly violated his right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984) (collecting cases) (recognizing right to effective assistance of counsel at trial).

The standard for evaluating such claims is set forth in *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986):

> In order to prevail, the [petitioner] must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S., at 688, 104 S.Ct. at 2064, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, at 694, 104 S.Ct., at 2068. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [petitioner] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

Applying this standard, it is our view that whether or not Williams had joined in the motion to suppress directed to the Entry Ruling, and whether or not the Entry Ruling had been challenged and *Steagald* had been invoked on direct appeal here (as occurred in the First Circuit), suppression of the evidence seized from the Cleveland residence would not have resulted. In other words, for reasons hereinafter stated, we conclude that petitioners' Fourth Amendment claim is not meritorious.

This conclusion moots many of the arguments advanced here and issues addressed in the ruling by Judge Glasser from which this appeal is taken. Specifically, we need not and do not consider: (1) whether appellate counsel for Laaman and Curzi procedurally defaulted by failing to raise the *Steagald* issue on direct appeal here;[4] (2) whether the failure of Williams' counsel to join in the suppression motion directed to the Entry Ruling at trial resulted in a waiver under Fed.R.Crim.P. 12(b)(3); (3) whether petitioners' Fourth Amendment claims are cognizable on § 2255 review on their own merits, apart from providing a basis for a Sixth Amendment claim of ineffective assistance of counsel (i.e., whether the authority of *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), survived *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)); or (4) the adequacy of the performance of any counsel on behalf of petitioners.

B. *The Merits of Petitioners' Fourth Amendment Claim.*

It is not clear to us that *Steagald*, the linchpin of the First Circuit rulings, is properly invoked to invalidate the arrest of Laaman and Curzi and the protective sweep of the Cleveland Residence. In *Steagald*, the investigating officers had two days notice that the fugitive they sought was at a specified address, but nonetheless proceeded there with an arrest warrant for the fugitive but no search warrant for the premises. 451 U.S. at 206, 101 S.Ct. at 1644. Here, by contrast, the investigating officers were not assured of the residence at which Williams (for whom they had an arrest warrant) was located, or of its ownership, until approximately two hours before petitioners were arrested, and were engaged in evacuating a city block and preparing for an arrest of a dangerous fugitive that might be triggered by unpredictable events during that two-hour period.

In *Steagald*, furthermore, nothing occurred to provide any independent authorization for the search of the premises at issue. Here, by contrast, when petitioners came out of the Cleveland Residence and Williams was recognized, the other petitioners were subject to arrest, at a minimum,[5] for harboring a fugitive. *See* 18 U.S.C. § 1071 (1988); *United States v. Erdman*, 953 F.2d 387, 390 (8th Cir.) (§ 1071 violated by any physical act of providing assistance, including food, shelter, and other assistance to aid in avoiding detection and apprehension), *cert. denied*, — U.S. —, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992); *United States v. Silva*, 745 F.2d 840, 849 (4th Cir.1984) (same), *cert. denied*, 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985); *United States v. Kutas*, 542 F.2d 527, 528–29 (9th Cir.1976) (same as to cognate 18 U.S.C. § 1072 (1988)), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977). We held in *United States v. Donaldson*, 793 F.2d 498, 501–02 (2d Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987), that in such circumstances the premises of the arrestee could be searched as a valid incident of the arrest to locate the harbored fugitive, and that the *Steagald* rule was inapplicable. In *Donaldson*, to be sure, the fugitive had not yet been apprehended, while in the present case Williams came out of the Cleveland Residence together with Laaman and Curzi. *Donaldson* nonetheless provides considerable support for Judge Glasser's ruling, 618 F.Supp. at 1392–93, that the arresting officers were entitled to sweep the premises to determine whether other members of the UFF remained undetected.

The First Circuit rulings made no reference to *Donaldson*. The court of appeals ruled that any justification arising at the time of arrest was irrelevant, because the sweep of the premises had been predeter-

4. The district court addressed this issue under the "deliberate bypass" standard, *see* 773 F.Supp. at 538–39, but we have since displaced that rule with a "cause and prejudice" test for determining whether a federal defendant waived a claim under § 2255 by failing to raise it on direct review. *See Campino v. United States*, 968 F.2d 187, 189–190 (2d Cir.1992).

5. There were outstanding warrants for Laaman's arrest.

mined. 867 F.2d at 39–40. The district court concluded that the order to Laaman and Curzi to exit the house "effectively and practically constituted a search for them and resulted in their immediate seizure" in violation of *Steagald,* and that any knowledge derived from their arrest was thus to be disregarded as "fruit of the poisonous tree." 699 F.Supp. at 1000.

■ In any event, assuming that *Steagald* applies to invalidate the initial sweep and the Cross Affidavit must therefore be evaluated without regard to the evidence thus uncovered, we conclude that the remaining information in the Cross Affidavit adequately established probable cause for the issuance of a search warrant for the Cleveland Residence. When an application for a search warrant includes both tainted and untainted evidence, the warrant may be upheld if the untainted evidence, standing alone, establishes probable cause. *See United States v. Oakley,* 944 F.2d 384, 386 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992); *United States v. Salas,* 879 F.2d 530, 537 (9th Cir.), *cert. denied,* 493 U.S. 979, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989); *Curzi,* 867 F.2d at 45; *Levasseur,* 816 F.2d at 43; *Ferguson,* 758 F.2d at 849 (citing *United States v. Lace,* 669 F.2d 46, 48–49 (2d Cir.), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982)); *United States v. Johnson,* 690 F.2d 60, 63 (3d Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983); *United States v. Marchand,* 564 F.2d 983, 992–94 (2d Cir.1977) (collecting cases), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *United States v. Adames,* 485 F.Supp. 965, 971 (E.D.N.Y. 1980) (collecting cases), *aff'd mem.,* 652 F.2d 55 (2d Cir.1981); *United States v. Epstein,* 240 F.Supp. 80, 82 (S.D.N.Y.1965). To suppress evidence under such circumstances would "put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one." *Murray v. United States,* 487 U.S. 533, 541, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472 (1988) (citing *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 25, 81 L.Ed.2d 377 (1984)).

Here, the affidavit used to support the search warrant consisted of a detailed description of the criminal activities of Williams and other members of the UFF organization; an outline of evidence of criminal activities obtained in two prior searches of residences inhabited by the Mannings and a search of a residence occupied by Levasseur; a summary regarding the surveillance of the Cleveland Residence, the ensuing arrests, the protective sweep, and the evidence then discovered in plain view; and a description of evidence sought by the requested search.

Confining our attention to Williams alone, on the premise that the arrests of Laaman and Curzi violated *Steagald* and accordingly cannot provide any information to support a finding of probable cause, the only connection established between Williams and the Cleveland Residence was his overnight stay there. Williams was among the nation's most wanted fugitives, however, and had been the subject of an intensive nationwide manhunt for years. He was suspected of continuous involvement in serious criminal activity, and of being armed with deadly weapons on an ongoing basis. He lived "underground," traveling from location to location in coordination with his equally dangerous confederates, and this itinerant, fugitive status increased the likelihood that he would carry with him evidence of any criminal activities in which he was engaged. On three previous occasions when law enforcement representatives had searched premises recently inhabited by UFF activists, significant evidence of criminal activity had been discovered. We accordingly conclude that in view of the unique circumstances of his crimes and activities, Williams's overnight presence at the Cleveland Residence sufficed to establish probable cause for a search of those premises.

■ Admittedly, our conclusion is directly at odds with that of the First Circuit. *Cf. Curzi,* 867 F.2d at 46. There, the court deemed Williams' presence to be "manifestly inadequate to carry the day," concluding that:

A suspect's presence at a dwelling not reasonably thought to be his abode or the abode of a criminal confederate, *without more*, is too tenuous a connection to establish a meaningful relationship between the suspect and the contents of the house.

*Id.* (emphasis added). We have no quarrel with this proposition in the abstract, but as indicated *supra*, we believe that the Cross Affidavit, in the particular circumstances of this case, provided a good deal "more" than Williams' mere presence at the Cleveland Residence.

When this question was last presented to us, we concluded that:

> [M]ore than thirty paragraphs in the Cross Affidavit recited detailed information.... about the appellants' criminal activities, about previous discoveries of weapons, ammunition, dynamite and other materials at houses abandoned by the appellants, and about the then-recent sightings of explosives, weapons, and other evidence in the particular places to be searched.... Those paragraphs provided more than enough "independent and lawful information ... to support [a finding of] probable cause."

*Levasseur*, 816 F.2d at 43–44 (quoting *Ferguson*, 758 F.2d at 849). On the problematic supposition that *Steagald* would require the removal from the quoted equation of the four weapons and cannister of explosive powder sighted during the protective sweep of the Cleveland Residence, we conclude that the Cross Affidavit nonetheless established probable cause to search the premises.

We accordingly rule that petitioners have not presented a valid Fourth Amendment claim in support of their § 2255 applications, and that no evidentiary hearing was required with respect thereto.

## Conclusion

We affirm the order of the district court denying § 2255 relief to petitioners.