UNITED STATES of America, Plaintiff,

v.

Norman DIOTTE, Defendant.

No. 93–CR–30A.

United States District Court,
W.D. New York.

Oct. 26, 1993.

Patrick H. Nemoyer, U.S. Atty. (Susan M. Barbour, Asst. U.S. Atty., of counsel), Buffalo, NY, for the U.S.

Andrew C. LoTempio, Buffalo, NY, for defendant.

## DECISION AND ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on February 8, 1993. Defendant subsequently made various motions to suppress evidence and statements. On July 14, 1993, Magistrate Judge Heckman filed a Report and Recommendation recommending that defendant's motion to suppress evidence be denied. Item No. 23. The instant Report and Recommendation addresses defendant's motion to suppress evidence seized pursuant to search warrants for a 1988 tractor trailer operated by defendant and a 1981 Cadillac Deville, on the ground that the information contained in the supporting affidavit was insufficient to establish probable cause and that the warrants were based on illegally obtained information.

Defendant filed objections to the Report and Recommendation on August 9, 1993, Item No. 26, and the government filed a response on August 25, 1993. Item No. 27. The Court heard oral argument on defendant's objections on September 7, 1993. At oral argument, this Court requested the parties to submit supplemental papers addressing defendant's objection to the Report and Recommendations. The government submitted a supplemental memorandum on September 17, 1993. Defendant submitted a response to the government's supplemental memorandum on September 24, 1993 and continued oral argument on September 28, 1993.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Defendant has raised five objections: (1) the search warrant for defendant's tractor trailer was based on insufficient probable cause; (2) the evidence indicates that there was a search of the tractor trailer prior to the issuance of the search warrant; (3) there was no probable cause for defendant's arrest; (4) but for the illegal arrest and detention of defendant, the observations and search of the tractor trailer would not have occurred; and (5) the Report and Recommendation is inconsistent or reflects Magistrate Judge Heckman's doubt regarding whether there was probable cause for the search of the tractor trailer, and fails to recognize the importance of defendant's personal motion to suppress.

Upon *de novo* review of those portions of the Report and Recommendation to which objections have been made, and after reviewing the submissions and hearing argument from counsel, the Court adopts the proposed findings of the Report and Recommendation. With respect to defendant's fifth objection to the Report and Recommendation, the Court finds that defendant has misinterpreted Magistrate Judge Heckman's analysis, and the importance of defendant's motion to suppress has been fully recognized. Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, the Court denies defendant's motion to suppress evidence seized pursuant to the search warrants in question.

The parties are directed to meet with the Court at 9:00 a.m. on November 1, 1993 to set a date for trial.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned to hear and report on all pretrial motions pursuant to 28 U.S.C. § 636(b)(1)(a) and (b).

Defendant Diotte is charged in the three-count indictment with possession of cocaine with intent to distribute, conspiracy to commit the same offense and possession of cocaine. The charges arise out of the seizure of 100 pounds of cocaine on January 20, 1993, pursuant to the search warrants issued by the undersigned. Diotte moves to suppress the evidence seized pursuant the search warrants, arguing that the information contained in the supporting affidavit is insufficient to establish probable cause and is based on illegally obtained information. Co-defendant Thomas originally joined Diotte in the motion, but later withdrew his motion.

For reasons set forth below, Defendant's motion should be denied.

## BACKGROUND

Initially, both Defendants in the case moved to suppress (1) statements made to Government agents upon arrest, and (2) evidence seized pursuant to two search warrants. Testimony was heard on the Defendants' statements on March 18 and April 18, 1993. On May 19, the Government changed its position and announced that it would not be using the Defendants' statements at trial. The focus of the hearing then became the search warrant application, and a further hearing was held on May 19.

The hearing established that two search warrants were signed at 5:12 p.m. on January 20, 1993, both based on the identical application. The first was a search warrant for a 1981 Cadillac Deville registered to Defendant Thomas, which Thomas had been observed driving prior to his arrest. Upon execution of this warrant, the agents found two duffle bags in the trunk containing approximately 45 kilograms of cocaine.

The second search warrant, signed at the same time, was for a 1988 Ford tractor trailer observed in the immediate vicinity of Defendant Diotte prior to his arrest. Upon search of the tractor, the agents found a small quantity of cocaine believed to be for personal use, as well as documents and tools.

The warrants incorporate by reference a search warrant and application dated January 18, 1993 for a 1986 Mercury Grand Marquis. The prior search warrant application established that the 1986 Mercury was parked in the Hilton parking ramp in Buffalo, New York from January 13 through January 18 under continuous surveillance by the DEA. On January 14, a dog trained in the detection of narcotics alerted to the vehicle.

The application in support of the two January 20 search warrants established that on January 19, 1993, Defendant Thomas entered the United States via the Rainbow Bridge in Niagara Falls driving his 1981 Cadillac Deville. He then met at the Buffalo Hilton with two Hispanic males, Carlos Arango and Julio Masso. Arango and Masso had previously occupied the 1986 Mercury Grand Marquis. Thomas then left his Cadillac at the Hilton and took a cab to the Sheraton Inn near the Walden Galleria parking lot, where he registered.

On January 20, 1993, Carlos Arango drove the 1981 Cadillac to the Walden Galleria parking lot within view of Thomas' room. Shortly thereafter, Thomas met with Arango in the J.C. Penney's parking lot at the Galleria Mall. Thomas then crossed Walden Avenue and met with a white male (later identified as co-defendant Diotte) in the parking lot of the truck stop on Walden Avenue in the immediate vicinity of the 1988 Ford tractor trailer.

Meanwhile, in the Hilton parking lot, agents observed Masso loading duffle bags into the trunk of the 1986 Mercury. In mid-afternoon of January 20, Arango and Masso drove the 1986 Mercury to the J.C. Penney parking lot and transferred the duffle bags to the trunk of Thomas' 1981 Cadillac. Thomas then got into the 1981 Cadillac and drove it across Walden Avenue to the truck stop previously mentioned. Diotte got into the 1986 Cadillac and left the area with Thomas. The agents observed a false compartment in the bottom of the 1988 Ford trailer.

Defendant argued that the information contained in the application in support of the warrant is insufficient to establish probable cause. I previously held that this issue can be determined by reference to the search warrant and the application in support thereof and it does not require an evidentiary hearing. *U.S. v. Caming*, 968 F.2d 232, 235–236 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 416, 121 L.Ed.2d 339 (1992).

However, by presenting pictures of the tractor trailer, Diotte convinced the court that there was a factual question as to whether the false compartment in the 1988 tractor trailer could have been observed without an actual search of the trailer. Accordingly, the testimony on May 19 was limited to this issue.

At the May 19 hearing, DEA task force agents Phil Torre and J. Bradford Morris testified as to their observations of the tractor trailer prior to the search. Agent Torre testified that at approximately 3:30 p.m. on January 20, 1993 the Defendants were arrested in the K–Mart parking lot. He was

present and, after the arrest, looked underneath the tractor trailer. He smelled fresh paint and observed a compartment welded into the bottom of the trailer in its midsection. This compartment was reinforced by sheet metal and showed new weld marks. He then went to the rear of the trailer, which was open to view. The trailer had a tarp strapped over the top which went part way down the back leaving an open area exposed. There were no rear doors. With a flashlight, he looked into the trailer and observed the floor boards of the trailer. At the area where the compartment was observed underneath the trailer, he observed a series of screws which appeared to be unscrewed and raised above the floor area. He relayed his observations to the agent obtaining the search warrant, and ¶ 18 was inserted into the application. Paragraph 18 states as follows:

> 18. Observation of the 1988 tractor trailer revealed a false compartment. The unidentified white male with whom Brian Thomas met was the operator of the tractor trailer.

### DISCUSSION

■ Diotte raises several arguments in support of his suppression motion. First, he argues that the two search warrants were not supported by probable cause. However, a review of the application, summarized above, clearly supports a finding of probable cause to search both the 1988 tractor trailer and the 1981 Cadillac. Accordingly, this argument must be rejected.

Defendant Diotte next argues that the observations of the false compartment, referred to in ¶ 18 of the search warrant application, were obtained as a result of an illegal search of the trailer.

■ This argument must also be rejected. The agent's observations underneath the tractor trailer were in plain view and did not constitute an illegal search. Furthermore, there was no physical entry into the rear of the truck. The shining of a flashlight into the rear of the truck does not amount to a search. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

Finally, Defendant argues that the observations of the trailer occurred only after the Defendants were illegally arrested. To understand this argument, it is necessary to review certain facts which were not included in the search warrant affidavit, but which came to light during the course of the hearing. The Defendants, it turns out, were arrested at approximately 3:30 p.m. The search warrants were not obtained until 5:12 p.m. Accordingly, the drugs which form the basis for the indictment were not seized until after the Defendants had been under arrest and interviewed. This sequence of events is not readily apparent from a review of the search warrant application.

Defendant argues that the arrest of Defendant Diotte at 3:30 p.m. was not supported by probable cause. The Government at first appeared to concede this, because it decided not to use Defendants' admissions made after arrest but before the search. However, in subsequent papers, the Government clarified its position that it believed probable cause *did* support the arrest.

The record is undisputed that the observation of the false compartment occurred after Defendant Diotte was arrested. Defendant therefore argues that but for his illegal arrest, he would have been free to leave the area in the tractor trailer and the agents would never have had the opportunity to observe the false compartment.

■ Although the question is a close one, I find that there was probable cause to arrest Diotte. Thomas had been clearly identified with likely narcotics trafficking and, on January 20, Diotte had twice been observed meeting with Thomas. His 1988 tractor trailer had been parked in the vicinity of the Cadillac containing the duffle bags. Based on all the information set forth in the search warrant application and presented at the hearing, the agents had probable cause to believe that Diotte was in the process of picking up the duffle bags for further transportation.

■ But even assuming, *arguendo*, that that was not probable cause to arrest Diotte as of 3:30 p.m. on January 20, the observations of the truck are not the "illegal derivative" of the Defendant's arrest. The courts

have repeatedly held that evidence does not become "fruit of the poisonous tree" merely because it could not be discovered "but for" the illegal actions of police. *See, e.g., Wong Sun v. U.S.,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963); *U.S. v. Parker,* 722 F.2d 179, 184 (5th Cir.1983). Instead, the question is whether the evidence at issue is obtained " 'by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. U.S., supra,* 371 U.S. at 488, 83 S.Ct. at 417 (quoting *Maguire, Evidence of Guilt,* 221 (1959)). Although there are no cases directly in point, the facts here do not warrant a finding that the illegal arrest was exploited. The observations occurred in plain view, independent of the arrest. The only connection to the arrest is a temporal one—i.e., the observation of the false compartment occurred after the arrest. If the Defendants had not been arrested, the observation very well may have been made in any event.

 It is also important to bear in mind the impact of Defendant's argument. Even assuming, *arguendo,* that ¶ 18 is tainted as "fruit of the poisonous tree," the appropriate analysis is to evaluate probable cause without reference to ¶ 18. *Laaman v. U.S.,* 973 F.2d 107, 111 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). As to the search warrant for the Cadillac in which the two duffle bags of cocaine were found, there is ample probable cause to support the warrant without reference to ¶ 18. As to the search warrant for the tractor trailer, the question of probable cause is much closer. However, the only contraband found in the tractor trailer was the small quantity of cocaine believed to be for personal use. Even if Defendant were to prevail in his argument, the only evidence that would be suppressed is that cocaine.

### CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.

**SO ORDERED.**

DATED: Buffalo, New York

July 14, 1993